# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **SOUTHERN APPALACHIAN** | ) | |
| **MOUNTAIN STEWARDS, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:14CV00024 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **RED RIVER COAL COMPANY, INC.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Benjamin A. Luckett and Isak Howell, Appalachian Mountain Advocates, Lewisburg, West Virginia, for Plaintiffs; Brooks M. Smith, Troutman Sanders LLP, Richmond, Virginia, and Stephen M. Hodges and Seth M. Land, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendant.*

In this citizens' suit under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1387, the plaintiffs allege that the defendant coal mining company has violated National Pollution Discharge Elimination System ("NPDES") permits for four of its mines because it has exceeded allowable discharges into the South Fork of the Pound River, a stream located in this judicial district that is subject to a Total Maximum Daily Load ("TMDL") developed by the state environmental agency.[1]

---

[1] A TMDL describes a value of the maximum amount of a pollutant that a body of water can receive while still meeting water quality standards under section 303(d) of the CWA, codified in 33 U.S.C. § 1313(d). Under section 303(d), states are required to adopt water quality standards and list waters within their boundaries that are not meeting these standards. Along with this 303(d) list, states must develop a TMDL for each pollutant that is impairing the waters, "established at a level necessary to implement the applicable water quality standards." 33 U.S.C. § 1313(d)(1)(C). "A core requirement of any TMDL is to divide sources of contamination along the water body by specifying load

Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes citizens "to bring suit against any NPDES permit holder who has allegedly violated its permit." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 152 (4th Cir. 2000) (en banc).

The defendant coal company has moved to dismiss the Complaint on two grounds: (1) that the TMDL requirements are not incorporated into the NPDES permits at issue; and (2) that in any event, the court should abstain from asserting jurisdiction over the case under the doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

After careful consideration of the parties' arguments, I will deny the Motion to Dismiss because further development of the record is necessary.

The NPDES permits in this case all contain the following condition, referred to as the (n)(3) condition: "The discharge of any pollutant(s) from this facility that enters into a water body with an existing and approved Total Maximum Daily Load (TMDL) must be made in compliance with the TMDL and any applicable TMDL implementation plan." (Pl.'s Br. Ex. 1, p. 5.) It appears that the TMDL for the South Fork of the Pound River was dated after the issuance of these permits. The

---

allocations, or LAs, to predict inflows of pollution from particular non-point sources; and to then set[] wasteload allocations, or WLAs, to allocate daily caps among each point source of pollution." *Anacostia Riverkeeper, Inc. v. Jackson*, 798 F. Supp. 2d 210, 248-49 (D.D.C. 2011). The state must submit the TMDL to the federal Environmental Protection Agency for approval, and the EPA must approve it or create its own TMDL. 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(d).

defendant argues that the plain language of the (n)(3) condition, as well as the purposes and history of the TMDL process, dictate a finding that it cannot be held to the requirements of a TMDL that did not exist at the time of the issuance of its permits.

When interpreting NPDES permits, courts use contract law principles. *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 268 F.3d 255, 269 (4th Cir. 2001). If "the language is plain and capable of legal construction, the language alone must determine" the permit's meaning. *FDIC v. Prince George Corp.*, 58 F.3d 1041, 1046 (4th Cir. 1995). If the language "is ambiguous, however, then we must look to extrinsic evidence to determine the correct understanding of the permit." *Piney Run Pres. Ass'n*, 268 F.3d at 270.

The construction of an ambiguous contract term "'is a question of fact which, if disputed, is not susceptible of resolution under a motion to dismiss for failure to state a claim.'" *Horlick v. Capital Women's Care, LLC*, 896 F. Supp. 2d 378, 394 (D. Md. 2011) (quoting *Wolman v. Tose,* 467 F.2d 29, 34 (4th Cir. 1972)); *see also Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir.1992) (reversing trial court's grant of a motion to dismiss because contract was "not free from ambiguity").

I find that the permit language in question does not plainly lead to the defendant's proposed meaning. Accordingly, further amplification of the record is

-3-

Case 2:14-cv-00024-JPJ-PMS   Document 19   Filed 09/10/14   Page 3 of 5   Pageid#: 556

needed in order to accurately determine whether the permits require compliance with the TMDL.

The defendant further argues that the court should dismiss the case under the *Burford* abstention doctrine, where a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if its adjudication in a Federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996) (internal quotation marks and citations omitted).

The abstention decision is a discretionary one. *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008). However, "although the standard is a deferential one, the discretion to abstain is tempered by the truism that the federal courts have a virtually unflagging obligation to exercise their jurisdiction" and "[t]here is little or no discretion to abstain in a case which does not meet traditional abstention requirements." *Id.* at 280 (internal quotation marks and citations omitted).

As with the permit language issue, abstention here implicates questions of fact that cannot be resolved on the present record. For that reason, I will decline to dismiss the case. It is possible that further factual development will present a case for abstention, although I certainly make no prediction in that regard.

-4-

Case 2:14-cv-00024-JPJ-PMS   Document 19   Filed 09/10/14   Page 4 of 5   Pageid#: 557

For the reasons stated, it is **ORDERED** that the Motion to Dismiss (ECF No. 6) is DENIED.

    ENTER: September 9, 2014

    /s/ James P. Jones
    United States District Judge