IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| SOUTHERN APPALACHIAN MOUNTAIN STEWARDS, ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:14CV00024 |
| v. | ) ) ) | **OPINION AND ORDER** |
| RED RIVER COAL COMPANY, INC., | ) ) | By: James P. Jones United States District Judge |
| Defendant. | ) | |

*Benjamin A. Luckett and Isak Howell, Appalachian Mountain Advocates, Lewisburg, West Virginia, for Plaintiffs; Brooks M. Smith, Troutman Sanders LLP, Richmond, Virginia, and Stephen M. Hodges and Seth M. Land, Penn Stuart & Eskridge, Abingdon, Virginia, for Defendant.*

This is a citizens' suit under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387. The plaintiffs, several environmental organizations ("Plaintiffs"), allege that the defendant, Red River Coal Company ("Red River" or "Defendant"), has violated a condition of its National Pollution Discharge Elimination System ("NPDES") permits for coal mines located in this judicial district.[1] Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes citizens "to bring suit against any

---

[1] Plaintiffs alleged in their Complaint that Red River had violated the NPDES permits at four of its coal mines. Thereafter, Red River provided Plaintiffs with evidence that the discharge points supporting Plaintiffs' allegations as to three of the permits have been removed. Therefore, Plaintiffs move for summary judgment solely for ongoing violations in relation to the one remaining permit. (Pls.' Mem. in Supp. 1 n.1, ECF No. 28.)

NPDES permit holder who has allegedly violated its permit." *Friends of the Earth, Inc., v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 152 (4th Cir. 2000) (en banc).

The parties have now filed cross motions for summary judgment, which motions have been fully briefed and argued and are ripe for decision. Plaintiffs seek at this point a declaration and order from the court enjoining future violations of Red River's permit, with civil penalties to be later determined; Red River seeks judgment in its favor on the whole case.

The disputes centers on the parties' competing interpretations of a boilerplate condition of all of Red River's NPDES permits, referred to as "Condition (n)(3)."[2] Condition (n)(3) provides that "[t]he discharge of any pollutant(s) from this facility that enters into a water body with an existing and approved Total Maximum Daily Load (TMDL) must be made in compliance with the TMDL and any applicable TMDL implementation plan." (ECF No. 13-1 at 5). Plaintiffs contend that the plain meaning of this provision incorporates a TMDL later-developed by the Virginia Division of Mined Land Reclamation ("DMLR") and approved by the Environmental Protection Agency ("EPA"). Plaintiffs contend that discharges by Red River are higher than the allowable discharges set

---

[2] Condition (n)(3) is one of many standard conditions contained in a 10-page state agency document entitled "DMLR NPDES Permit Conditions," dated January 3, 2003. (ECF No. 13-1.)

forth in the TMDL.[3]  Thus, Plaintiffs assert that Red River's discharges violate Condition (n)(3) of the NPDES permit.  Red River argues that the TMDL is not directly binding through Condition (n)(3) of the NPDES permit, but rather that the proper interpretation of the condition requires phased implementation of such standards, as overseen by DMLR.  Red River contends it is thus in complete compliance with the permit conditions.[4]

Earlier in this case, I denied Red River's Motion to Dismiss, on the ground that further development of the factual record was necessary.  *S. Appalachian Mountain Stewards v. Red River Coal Co.*, No. 2:14CV00024, 2014 WL 4462427, at *2 (W.D. Va. Sept. 10, 2014). Since that decision, Red River has produced further evidence of DMLR's interpretation of the permit language, as well as the opinions of agency officials that Red River is in compliance with the permit conditions.  Plaintiffs do not challenge the fact of the agency's interpretation of the permit conditions or the relevant statutes, but merely Red River's compliance with the permit.  Therefore, there is no genuine issue of material fact to preclude

---

[3]  In particular, Plaintiffs contend that Outfall 006T of Permit 0081272 has discharged Total Suspended Solids ("TSS") and Total Dissolved Solids ("TDS") in excess of the daily and annual Wasteload Allocations ("WLA") limits set forth in the TMDL.  Defendant does not dispute these calculations.

[4]  Red River also argues that it would violate due process to require it to comply with standards of which it did not have fair notice at the time of its permit. (Def.'s Mem. in Supp. 9, ECF No. 26.)  It is not necessary for me to consider this argument.

-3-

Case 2:14-cv-00024-JPJ-PMS   Document 35   Filed 04/14/15   Page 3 of 12   Pageid#: 743

summary judgment. I find that Red River is entitled to summary judgment in its favor.

I.

The NPDES system is an exception to the CWA's general prohibition of the "discharge of any pollutant by any person." 33 U.S.C. § 1311(a). The CWA authorizes the EPA to issue NPDES permits that "define[], and facilitate[] compliance with, and enforcement of," a discharger's obligations to comply with the general water quality standards enumerated in the CWA. *EPA v. Cal. ex rel. State Water Res. Control Bd.*, 426 U.S. 200, 205 (1976). The CWA authorizes the EPA to delegate to states the authority to administrate their own NPDES programs to govern discharges within their borders, subject to EPA approval. *See* 33 U.S.C. § 1342(b); *see also Ohio Valley Envtl. Coal. v. Miano*, 66 F. Supp. 2d 805, 807 (S.D. W.Va. 1998) ("The federal NPDES program allows a state to take control of the permitting process within its borders, so long as it complies with the federal standards set forth by the Clean Water Act and the regulations promulgated under that act."). In Virginia, DMLR oversees the NPDES permitting system for coal mining operations.

As part of the NPDES system, states must develop standards, known as TMDLs, for the pollutants being discharged into the states' waterways. *See* 40 CFR § 122.44(d)(1)(vii)(B) (stating that NPDES permits must contain conditions consistent with the requirements and assumptions of the wasteload allocations in

-4-

the TMDL). A TMDL describes a value of the maximum amount of a pollutant that a body of water can receive while still meeting water quality standards under Section 303(d) of the CWA, codified in 33 U.S.C. § 1313(d). Under Section 303(d), states are required to adopt water quality standards and a list of waters within their boundaries that are not meeting these standards. Along with this 303(d) list, states must develop a TMDL for each pollutant that is impairing the waters, "established at a level necessary to implement the applicable water quality standards." 33 U.S.C. § 1313(d)(1)(C). "A core requirement of any TMDL is to divide sources of contamination along the water body by specifying load allocations, or LAs, to predict inflows of pollution from particular non-point sources; and to then set[] wasteload allocations, or WLAs, to allocate daily caps among each point source of pollution." *Anacostia Riverkeeper, Inc. v. Jackson*, 798 F. Supp. 2d 210, 248-49 (D.D.C. 2011). Although TMDLs are not "self-implementing instruments," they provide information to the EPA and state agencies "to coordinate necessary responses to excessive pollution in order to meet applicable water quality standards." *Id.* at 216. The state must submit the TMDL to the EPA for approval, and the EPA must approve it or create its own TMDL. 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(d).

Plaintiffs' present motion is aimed at a coal mine operated by Red River in Wise County, Virginia, under NPDES Permit 0081272, which was last renewed by

-5-

Case 2:14-cv-00024-JPJ-PMS   Document 35   Filed 04/14/15   Page 5 of 12   Pageid#: 745

DMLR on April 27, 2010.[5] The coal mine, called the Flat Gap Mine, discharges pollutants into the South Fork of the Pound River. A year after this permit was renewed, the State Water Control Board, with assistance from DMLR and the Virginia Department of Environmental Quality, issued a TMDL for the South Fork of the Pound River, which was approved by the EPA on April 28, 2011.[6]

The preface of the TMDL document states that, due to "uncertainties and differences of interpretation" regarding the data, predictive tools and conclusions that came to light during the TMDL development, a "'phased' TMDL" would be implemented "in accordance with EPA guidance." (ECF No. 7-1 at Preface-1). According to EPA guidance, a "phased" TMDL refers to "TMDLs that for scheduling reasons need to be established despite significant data uncertainty and where the State expects that the loading capacity and allocation scheme will be revised in the near future as additional information is collected." EPA, Memorandum: Clarification Regarding "Phased" Total Maximum Daily Loads 2 (Aug. 2, 2006), *available at* http://water.epa.gov/lawsregs/lawsguidance/cwa/tmdl/

---

[5] At oral argument, counsel advised that renewal of this permit is currently pending.

[6] A copy of the TMDL document, dated April 2011 and entitled "North Fork and South Fork Pound River Phased TMDLs for Benthic Impairments Wise County, Virginia," was filed with Red River's prior Motion to Dismiss. (ECF No. 7-1.) The TMDL document was developed and dated after all of the four permits in controversy in this case were issued. NPDES Permit 0080717 (Buck Knob Mine) was last renewed on May 4, 2010; Permit 0081401 (North Fox Gap Surface Mine) was last renewed on December 13, 2006; Permit 0081187 (Phillips Creek Deep Mine) was last renewed on January 8, 2009. (Mem. Supp. Def.'s Mot. Summ. J. 2 n.1, ECF No. 26.)

-6-

Case 2:14-cv-00024-JPJ-PMS   Document 35   Filed 04/14/15   Page 6 of 12   Pageid#: 746

tmdl_clarification_letter.cfm. Although the EPA has stated that phased TMDLs "must be established at a level necessary to meet water quality standards," it has also clarified that, in implementing phased TMDLs, "the time frame in which water quality standards will be achieved is based on a planned staged implementation of controls and a determination of the appropriateness of this timeframe is made on a case specific basis." *Id.* at 1.

The TMDL in this case stated that it will "utilize an adaptive management approach," which is "an iterative implementation process that moves towards achieving water quality goals while collecting, and using, new data and information." (ECF No. 7-1 at Preface-1.) This adaptive approach was "intended to provide time to address uncertainties with TMDLs and make necessary revisions while interim water quality improvements are initiated." (*Id.*) To this end, the document stated that a "revised" TMDL document would be developed by the Virginia Department of Environmental Quality and DMLR, and submitted to the EPA within two years of the date of the EPA's approval of the TMDL — April 28, 2011. The parties do not dispute that, to this date, DMLR has not yet submitted a revised TMDL for EPA approval. In the interim, the TMDL states that the wasteload allocations would be "effective and implemented by DMLR," but that this implementation would occur using a "staged approach." (*Id.* at Preface 2-3.)

DMLR has interpreted the assumptions behind the TMDL requirements to be consistent with its existing "transient/aggregated permitting approach." (O'Quinn Decl. 3, ECF 25-2.) According to George Joey O'Quinn, a Reclamation Program Manager for DMLR, such an approach has three elements, including that: "(1) mining wasteloads are monitored and tracked against the total wasteload allocations assigned in the TMDL; (2) best management practices ("BMPs") are implemented in order to maintain and/or reduce actual loads; and (3) additional reduction actions may be required where an individual source exceeds the total wasteload." *Id*. In addition, DMLR will provide notice to the permittee if any further actions are required to reduce wasteloads, including further monitoring, additional BMPs, and an enforceable schedule for their implementation. DMLR retains the authority to modify permit conditions or initiate an enforcement action against the permittee. *Id*.

DMLR's understanding of the permit condition at issue is memorialized in a state court settlement agreement in *Virginia Mining Issues Group v. State Water Control Board et al.*, Case No. CLI1002789-00 (City of Richmond Circuit Court, Apr. 16, 2012), which provides that:

> All the mining wasteload allocations included in the . . . South Fork of the Pound River TMDLs, and calculated by the Division's contractor, were developed with the assumption that they would be applied under the agency's existing transient/aggregated permitting approach. To apply them to permit limitations as individual wasteload allocations

would be inconsistent with the assumptions made during TMDL development.

(ECF No. 25-2 at 6.)

Although DMLR has not submitted a revised TMDL within the time suggested in the 2011 TMDL document, it has taken action to enforce the existing TMDL by providing Red River with notice of the need for additional wasteload reduction actions, including additional monitoring and BMPs, in a letter dated April 11, 2014. (ECF No. 25-2 at 10.)

II.

Pursuant to Federal Rule of Civil Procedure 56(a), the court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Plaintiffs contend that Red River is in violation of the plain language of Condition (n)(3) of its NPDES permits, which incorporates the wasteload limitations of "an existing and approved" TMDL. There is no dispute, however,

-9-

Case 2:14-cv-00024-JPJ-PMS   Document 35   Filed 04/14/15   Page 9 of 12   Pageid#: 749

that DMLR has not interpreted the NPDES language in a vacuum, as Plaintiffs desire, without regard to the applicable implementation plan. Indeed, Plaintiffs overlook that Condition (n)(3) itself states that the permittee must comply "with the TMDL and *any applicable TMDL implementation plan*." (ECF No. 13-1 at 5.) (emphasis added.)

Because the South Fork TMDL is a "phased" TMDL, DMLR has applied a "transient/aggregated" approach to implementation that includes a series of actions aimed to achieve wasteload reductions over time. DMLR has made clear that Red River has complied with all DMLR requirements with regard to the TMDL.

In short, although Plaintiffs frame their claims as based on a permit violation, they implicitly seek to challenge DMLR's interpretation of the permits at issue. An agency's interpretation of, or finding of facts under, a regulation that it has the authority to enforce is entitled to deference because "[a]dministrative agencies are simply better suited than courts to engage in such a process." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 569 (1980). Moreover, courts afford special deference in reviewing an agency's findings where the agency's particular technical expertise is involved. *Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs*, 674 F. Supp. 2d 783, 801 (S.D.W. Va. 2009). Finally, because the DMLR is a state agency empowered to develop TMDLs for waterways within Virginia, the court must adhere to the "strong public policy against a federal court's interference

-10-

Case 2:14-cv-00024-JPJ-PMS   Document 35   Filed 04/14/15   Page 10 of 12   Pageid#: 750

in state agency determinations absent some finding that the agency has violated federal law." *United States v. Alcoa, Inc.*, No. A-03-CA-222-SS, 2007 WL 5272187, at *7 (W.D. Tex. March 14, 2007); *see also Palumbo v. Waste Techs. Indus.*, 989 F.2d 156, 160 (4th Cir. 1993) (refusing to permit "collateral attack" on permitting decisions of state environmental agency and federal EPA).

Plaintiffs have made no attempt to argue that DMLR's findings and conclusions regarding the South Fork TMDL are inadequate or that they do not comply with federal law. Rather, they allege that Red River has violated its permits — a conclusion that DMLR disagrees with. Absent a reason to disregard DMLR's findings, which Plaintiffs do not present, I find that I must defer to DMLR's determination. I need not address Red River's *Burford* abstention arguments to reach this conclusion, because the question can be resolved by deference to the state permitting agency. Therefore, summary judgment for Red River is appropriate.

## III.

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion for Summary Judgment (ECF No. 27) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 25) is GRANTED.

A separate Judgment will be entered herewith.

ENTER: April 13, 2015

/s/ James P. Jones
United States District Judge